MAY TERM, 1881, No. 161.          MAY 30TH, 1881.

## Crawford *versus* Ritter.

1. Where an alleged sale is attacked on the ground of fraud, very slight evidence of combination is sufficient to let in admissions by parties against each other.

2. Where, therefore, in a suit against a constable for trespass in levying upon a horse as the property of the father of the alleged vendee, it was in evidence that the father had sold the horse to the vendor, made the arrangements for the purchase, had the management of other personal property bought at the same time, sold some of it, and received the proceeds, and had possession of the horse and used him, declarations of the father, not in the presence of the

[Crawford *v.* Ritter.]

son, tending to show that the horse really belonged to the father, were admissible.

3. Nor was it error for the Court to charge that in order to complete the sale there must be a delivery of the property sold.

ERROR to Court of Common Pleas of *Lycoming County*.

Trespass *de bonis asportatis* by Joseph W. Crawford against William L. Ritter.

The defendant, a constable, on the 25th of June, 1880, by virtue of an execution issued upon a judgment against Jonathan O. Crawford, levied upon a horse which it was alleged belonged to the plaintiff. Prior to the sale the plaintiff gave written notice to the defendant that he was the owner of the horse. The defendant, being indemnified, sold the animal July 10th, 1880.

The horse had belonged to Jonathan O. Crawford, the father of the plaintiff. On the 7th of October, 1875, he, by written agreement, sold it along with some real estate and other personalty to William C. Wilson.

On the 18th of January, 1878, Wilson entered into a written agreement with the plaintiff, for the consideration of $1000, which set forth that " the meaning of this agreement is to sell all the personal property bought of J. O. Crawford in agreement dated the seventh day of October, A.D. 1875." The plaintiff claimed title under this agreement. The consideration for this sale was paid by the surrender of two promissory notes for $2000 made by Wilson and held by the plaintiff. These notes, dated October 7th, 1875, had been given in 1877, as was alleged by Jonathan O. Crawford, to the plaintiff as part payment of an indebtedness from the former to the latter originating in a firm transaction in which they were both partners.

On the trial the plaintiff testified that the arrangements for the sale to him were made through his father. He himself was at Shamokin, and did not see Wilson. His father had the management of the other personal property purchased under the article of agreement. When asked whether he, the plaintiff, got possession of this personal property, he replied : " Nothing but the horse ; well, I don't know,—I modify that ; I think I did get possession of some other things,—some hay, and some things taken off the farm."

His father sold some of this personalty, and got the proceeds. His father had possession of the horse and put him out at service.

The defendant's counsel offered to prove by the defendant " that at the barn, when he went to levy on the horse, J. O. Crawford claimed that he was not worth $300, thereby meaning to claim the benefit of the $300 law. But after

[Crawford v. Ritter.]

reflecting he wished to see the writ, and then said it was the property of some other person when he discovered it was a writ such as it was,—summons in tort."

The offer was admitted, and an exception granted.

Defendant's counsel further offered to prove by Wilson " that the contract for the sale of the personal property and the Heisel farm from himself to J. O. Crawford was made with J. O. Crawford, and that he (Wilson) didn't know J. W. Crawford in the transaction at all; that the name of J. W. Crawford was used by J. O. Crawford for the purpose of preventing the property, that was to be sold in this way, from being levied upon by the creditors of J. O. Crawford; that it was debated between Wilson and Crawford to know whose name should be used. A number of different names were suggested, and they finally—at J. O. Crawford's own selection—settled upon the name of J. W. Crawford; that the witness on the stand didn't then know, and didn't learn that J. W. Crawford had any interest in the two notes of $1000 each, which form part of the consideration for the payment of the property sold; that the two notes did not constitute the whole of the consideration paid at that time to William C. Wilson, or that passed between Wilson and J. O. Crawford; that in addition to the two notes J.O. Crawford was to give to the witness, William C. Wilson, a piece of land known as the Bear Bottom Hollow, situated on the Loyalsock, or one of its tributaries, and he was to allow him to cut timber on another tract of land to equal the sum of $300; that J. O. Crawford was still further indebted to William C. Wilson on account of the executorship of the estate of his deceased father, and also owed Wilson money on account of his mother's estate, for which Wilson held two notes; that a part of the consideration for this sale was that Wilson was to release J. O. Crawford from this indebtedness; that Crawford also agreed to have the Bear Bottom Hollow sold for taxes, so as to be able to make a clear title; that Wilson, in pursuance of this agreement, went on and began cutting on the land that Crawford said he might cut $300 worth of timber from, and that Crawford notified him to stop,—that the attorneys in Williamsport were raising a fuss about it, and he had better wait until he could get it straightened up; that J. O. Crawford alone exercised ownership over the personal property thus sold under the article of agreement that the plaintiff has offered in evidence; that he told the witness repeatedly that his horse was his, and on several different occasions promised to give him the horse, because he was not able to carry out his part of the agreement in relation to his cutting timber, and getting title to the Bear Bot-

tom Hollow tract of land ; that J. W. Crawford never exercised any ownership, and never took any possession whatever of any part of the personal property mentioned in this article of agreement that the plaintiff has offered in evidence ; that the same remained in possession of William C. Wilson, as it always had done prior to the sale, and that he never had any interview with J. W. Crawford in relation to it, and that all his transactions were with J. O. Crawford and not with J. W. Crawford, and that his whole arrangement on the part of J. O. Crawford was for the purpose of cheating and defrauding his creditors."

The offer was admitted under exception.

The Court charged the jury *inter alia* as follows

" Now in the sale of all personal property, it is necessary not only that the price be fixed, and that the thing to be sold be set apart or designated in some way, but to complete a sale there must be a delivery of the property sold. . . . If J. O. Crawford has acted for him, and J. W. Crawford is seeking to reap the benefits of any contracts made by his agent, he is bound by anything his agent did that induced the contract. He cannot reap the benefits of such contract and deny anything that the agent did to secure such contract. He must take them as they stand, with all their imperfections on their head. . . . So if you should find, first, that there was no delivery of this property to any person authorized to receive it for J. W. Crawford, then there would be no complete sale, and the plaintiff would not be entitled to your verdict."

Exceptions were taken by plaintiff to these portions of the charge.

March 25th, 1881, the jury rendered a verdict for the defendant, on which judgment was subsequently entered.

The plaintiff then took a writ of error, assigning for error the admission of testimony and the charge of the Court as above set forth.

*H. C. McCormick* and *F. H. McCormick* for plaintiff in error.

A large amount of totally irrelevant and improper evidence was admitted relating in the main to declarations of Jonathan O. Crawford in the absence of, and without the knowledge of, the plaintiff.

When the horse came into the possession of the father, he was bailee, and his declarations of ownership are not evidence. Nor would his declarations as agent be evidence : Crist *v.* Kleber, 2 W. N. C., 158 ; Monocacy Bridge Company *v.* American Iron Bridge Manufacturing Company, 4 W. N. C., 277 ; Pennsylvania Railroad Company *v.* Titusville Plank

[Crawford v. Ritter.]

Road Company, 21 P. F. Smith, 355 ; Hannay v. Stewart, 6 Watts, 489 ; Fawcett v. Bigley, 9 P. F. Smith, 411.

Wilson was estopped by his written agreement from denying the ownership of the plaintiff: Tioga County v. South Creek Township, 25 P. F. Smith, 437 ; 1 Greenleaf on Evidence, sec. 207 ; Gest v. Espy, 2 Watts, 265 ; Barton v. Fetherolf, 3 Wr., 279.

No delivery was necessary. It was not a question between the creditors of Wilson and the plaintiff: North v. Turner, 9 S. & R., 244 ; Dallam v. Fitler, 6 W. & S., 323 ; Waldron v. Haupt, 2 P. F. Smith, 408 ; Boyle v. Rankin, 10 Harris, 168.

*O. H. Reighard* and *A. D. Hower* for defendant in error.

The acts and declarations admitted were such as occurred during the agency and in the line of his authority: Pennsylvania Railroad Company v. Plank Road Company, 21 P. F. Smith, 355 ; Dick v. Cooper, 12 Harris, 217.

These declarations were admissible as bearing on the *bona fides* of the transaction: McDowell v. Rissel, 1 Wr., 164; Heath v. Page, 13 P. F. Smith, 126 ; Confer v. McNeal, 24 P. F. Smith, 112; Bredin v. Bredin, 3 Barr, 81.

As between vendor and vendee, a change of possession is not necessary, but when the rights of creditors intervene and fraud is alleged change of possession is necessary to remove the badge of fraud: Billingsley v. White, 9 P. F. Smith, 464 ; Garman v. Cooper, 22 P. F. Smith, 32.

PER CURIAM: There was ample evidence to submit to the jury of actual fraud,—that while the horse was nominally the plaintiff's the real owner was the father, against whom the execution was issued. He was held out as the agent of his son, was in the actual possession, and very slight evidence of combination is sufficient to let in evidence of admissions by the parties against each other. There was no error in the admission of the testimony objected to. There was no error in the parts of the charge excepted to. If the plaintiff wished more particular instruction applicable to the facts of the case, he should have asked for them.

Judgment affirmed.